IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM D. WATKINS,                           Case No. 6:15-cv-01539-MA

            Plaintiff,                         OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

            Defendant.

JAMES W. MOLLER
8655 S.W. Citizens Dr., Suite 104
Wilsonville, OR 97070

MARK A. MANNING
Harder Wells Baron & Manning, PC
474 Willamette Street, Suite 200
Eugene, OR 97401

     Attorneys for Plaintiff

1 - OPINION AND ORDER

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

SARAH ELIZABETH MOUM
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

     Attorneys for Defendant

MARSH, Judge

     Plaintiff William D. Watkins seeks judicial review of the final decision of the Commissioner

of Social Security denying his application for a period of disability and disability insurance benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and application for

Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act,

42 U.S.C. §§ 1381-1383f.  This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3).  For the reasons that follow, I affirm the Commissioner's final decision.

## PROCEDURAL AND FACTUAL BACKGROUND

     Plaintiff protectively filed his applications on February 14, 2012. In both applications,

Plaintiff alleges disability beginning January 14, 2012, due to right arm difficulties and a spinal

injury.  Plaintiff's applications were denied initially and upon reconsideration.  Plaintiff filed a

request for a hearing before an administrative law judge ("ALJ").  The ALJ held a video hearing on

September 10, 2013, at which Plaintiff appeared with his attorney and testified.  A vocational expert

("VE"), John Komar, also testified telephonically.

2 - OPINION AND ORDER

After the hearing, Plaintiff underwent a consultative psychological examination with Thomas Shields, Ph.D. The ALJ then sent written interrogatories to a second VE, Joel Greenburg. In December 2013, the ALJ submitted the interrogatories and the VE's responses to Plaintiff. On February 14, 2014, the ALJ issued an unfavorable decision. Plaintiff submitted additional medical evidence to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision became the final decision of the Commissioner.

Born in 1969, Plaintiff was 42 years old on his alleged onset of disability date, and 44 years old on the date of the ALJ's decision. Plaintiff attended high school and obtained a GED. Plaintiff has past relevant work experience as a construction carpenter.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner to show that the claimant can do other work that exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured. 42 U.S.C. § 416(I)(3); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 14, 2012, the alleged onset of disability date. At step two, the ALJ found that Plaintiff had the following severe impairments: residual pain status-post motor vehicle accident right arm amputation/re-attachment 1994, anxiety disorder, an adjustment disorder with a depressed mood, and alcohol dependence in early partial remission. At step three, the ALJ found that Plaintiff's impairment or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform light work but with the following limitations:

> [N]o more than occasional right-sided pushing/pulling, reaching above-the-shoulder, handling, or fingering; no limitations with the left upper extremity; no more than occasional climbing ladders/ropes/scaffolds; and no more than occasional crawling. [Plaintiff] is further limited to understanding, remembering, and carrying out no more than simple work tasks, defined as jobs with a specific vocational preparation (SVP) 2 and below.

Transcript of Record ("Tr.") at 23, ECF No. 11.

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work. At step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as cashier, order caller, and storage facility clerk. Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act since January 14, 2012, his alleged onset date.

## ISSUES ON REVIEW

Plaintiff contends that the ALJ failed to properly incorporate his limitations with social functioning and concentration, persistence and pace into the RFC, and failed to resolve the

4 - OPINION AND ORDER

inconsistency between his RFC to perform simple work tasks of an SVP 2 or below and the jobs identified by the VE requiring Level 3 reasoning. The Commissioner responds that the ALJ did not err, or alternatively, that Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## DISCUSSION

### I.    ALJ Properly Assessed Plaintiff's RFC

*A.    Standards*

The RFC and hypothetical posed to the VE must include all of a claimant's restrictions supported by substantial evidence and credited by the ALJ. 20 C.F.R. §§ 404.1545, 416.945; *Valentine*, 574 F.3d at 689; *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). However,

5 - OPINION AND ORDER

"[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Bayliss*, 427 F.3d at 1217.

B.    *Analysis*

Plaintiff contends that the ALJ failed to include in the RFC and corresponding hypothetical to the VE all of Plaintiff's limitations in the areas of social functioning as well as concentration, persistence and pace. Plaintiff argues that at steps two and three, the ALJ found that Plaintiff has mild difficulties in social functioning and moderate difficulties in concentration, persistence and pace and erred by omitting the ALJ's own step three limitations from the RFC. Plaintiff also argues that the ALJ erred by failing to include mild impairments in sustaining concentration assessed by Thomas Brent Shields, Ph.D. into the RFC. According to Plaintiff, because the ALJ gave Dr. Shields' opinion "great weight," the ALJ was required to include those limitations or provide adequate reasons discounting them. Plaintiff contends that because the ALJ failed to include or discount them, the ALJ erred. I disagree.

With respect to the mild difficulties in social functioning and "no more than moderate difficulties" in concentration, persistence and pace that the ALJ found at step three, Plaintiff's argument conflates the ALJ's analysis at steps two and three with the ALJ's RFC assessment at steps four and five, which are separate and distinct. *See* 20 C.F.R. §§ 404.1520a(b)(1), 404.1546(c), 416.920a(b)(1), 416.946(c). As specifically noted by the ALJ in the decision, the limitations identified at step three are "*not* an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3." Tr. 23; *see also* Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, *4 (July 2, 1996). Conversely, the RFC assessment requires a more detailed examination of all of a claimant's limitations credited by the ALJ and supported by substantial evidence in the

record. *See, e.g., Foster v. Colvin*, 6:12-cv-00698-HZ, 2013 WL 3994652, *4 (D. Or. Aug. 2, 2013) (noting that ALJ's finding of mild limitations identified at step three does not necessitate inclusion in RFC); *Swingle v. Colvin*, No. CV-15-00836-PHX-DGC, 2016 WL 1399362,*4-5 (D. Ariz. Apr. 11, 2016) (noting that *difficulties* at step three are not equivalent to *limitations* employed in an RFC assessment). The ALJ must consider the step two and three limitations, along with all of the other relevant evidence in the case record, when formulating the RFC. *See Israel v. Astrue,* 494 Fed. App'x 794, 796 (9th Cir. 2012) (distinguishing between step three limitations and RFC assessments); *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five."); *Fordham v. Colvin*, 6:13-cv-00907-JE, 2015 WL 106001, *7 (D. Or. Jan. 6, 2015) (holding ALJ did not err in omitting moderate limitations in social functioning under paragraph B at step three from RFC).

Turning to the ALJ's RFC assessment of Plaintiff's alleged mental impairments, the ALJ thoroughly discussed Plaintiff's alleged mental limitations, and the lack of objective evidence supporting them.[1] As the ALJ highlighted, initially, Plaintiff had no treatment for his alleged mental impairments, and in mid-2012, attended some counseling sessions with a social worker, and began taking psychotropic medication in late 2012. Tr. 25. Plaintiff reported benefits from his anti-anxiety and depression medications in March 2013. Given the lack of evidence, Plaintiff underwent a

---

[1]Notably, Plaintiff does not challenge the ALJ's assessment of his physical limitations or credibility. Nevertheless, I conclude the ALJ's findings in this regard are amply supported by substantial evidence in the record and free of legal error.

comprehensive psycho-diagnostic consultative examination post-hearing with Dr. Shields on October 1, 2013. Tr. 26, 438.

Dr. Shields conducted a clinical interview, reviewed records relating to Plaintiff's mental health, conducted a mental status examination and estimated Plaintiff's daily living capacities. As the ALJ accurately summarized, Dr. Shields noted that Plaintiff complained of a long history of depression, recent anxiety, and a distant history of drug and alcohol treatment. Tr. 26, 439-40. Dr. Shields observed that Plaintiff's hygiene and grooming were adequate, with mildly slurred speech (attributed to Plaintiff's pain medications for a leg injury unrelated to the current disability applications), was alert and fully oriented to person, place, time and situation, maintained good eye contact, and that Plaintiff's abstraction and comprehension were adequate. Tr. 442. Dr. Shields found that Plaintiff is:

> capable of understanding, remembering, and carrying out short and simple instructions. Intellectually, he is capable of understanding detailed instructions, although medication-induced sedation, low stress tolerance, and pain-related distractability could intermittently compromise his ability to remember detailed instructions. For similar reasons, his ability to sustain concentration on tasks over extended periods of time is expected to be mildly impaired. Socially, he is prone to irritability an he tends to avoid interpersonal contact as much as possible due to low stress tolerance. His past history of fighting seems to be most strongly associated with states of alcohol intoxication. From a psychological perspective, his ability to sustain persistence and pace are expected to be mildly impaired secondary to a combination of anxiety, low stress tolerance, and pain-related distractability. Moreover, he is currently taking Vicodin for acute right-leg pain, so medication induced sedations may further impair his ability to persist in the short-term[.]

Tr. 444. Dr. Shields diagnosed Plaintiff with anxiety disorder NOS (features of PTSD and sub-threshold symptoms of panic disorder without agoraphobia), adjustment disorder with depressive symptoms, alcohol dependence in early partial remission, and methamphetamine dependence in sustained full remission. Tr. 444. Dr. Shields completed a Medical Source Statement on October

13, 2013, assessing Plaintiff's ability to do work-related activities. Tr. 445-47. In that statement, Dr. Shields indicated that Plaintiff was mildly limited in his ability to: understand and remember simple instructions, carry out simple instructions, make judgments on simple work-related decisions, understand complex instructions, and make complex judgments on simple work-related decisions. Tr. 445. Additionally, Dr. Shields indicated that plaintiff was mildly limited in his ability to interact appropriately with the public, supervisors, co-workers, and respond appropriately to usual work situations and changes in a routine work setting. Tr. 446. In that statement, "mild" was defined as a "slight limitation in this area, but the individual can generally function well." Tr. 445.

In the decision, the ALJ accurately summarized Dr. Shields' assessment that Plaintiff has "only mild restrictions related to performance of all mental-related tasks, including social functioning, concentration, and carrying out all levels of tasks." Tr. 26. Additionally, the ALJ gave Dr. Shields' opinion "great weight" and determined that limiting Plaintiff to simple work tasks in the RFC reasonably accounted for Dr. Shields' mental status examination findings, Plaintiff's self-reported right arm pain and dysfunction, Plaintiff's intermittent anxiety and depression treated with medication, and his ongoing alcohol use. Tr. 23, 26. As the ALJ summarized:

> the record does not provide a reasonable basis for finding a greater level of limitations. Consideration of credibility issues, including the lack of significant complaints, reports of stable symptoms with no acute findings within treatment records, and ongoing non-compliance with treatment advice, renders the claimant's allegations of disabling symptoms and limitations not fully credible.

Tr. 26. Thus, the ALJ's limitation to simple work tasks takes into consideration Plaintiff's negative credibility determination and Dr. Shield's slight limitations in sustained concentration and social functioning reflected in the record as a whole. Tr. 26, 445-46.

Plaintiff contends the ALJ was required to include Dr. Shields' mild limitations in the RFC and corresponding hypothetical to the VE, citing *Hutton v. Astrue*, 491 Fed. App'x 850 (9th Cir. 2012). Plaintiff's reliance on *Hutton* is misplaced. In *Hutton*, the ALJ determined at step two that the claimant's PTSD resulted in mild limitations in concentration, persistence and pace, and determined that his PTSD was "nonsevere." *Id.* at 850. There, the *Hutton* court concluded that the ALJ erred by failing to consider the claimant's PTSD by excluding it from consideration when assessing the claimant's RFC, contrary to 20 C.F.R. § 404.1545(a)(2) (requiring that an ALJ consider all impairments, including those "not 'severe'" when assessing RFC). *Id.* at 850-51. Unlike *Hutton*, in this case, the ALJ did consider Plaintiff's mild limitations in concentration, persistence and pace as well as social functioning when assessing Plaintiff's RFC and concluded that his credible limitations combined with Dr. Shields' opinion were accommodated by restricting Plaintiff simple work tasks, and that greater limitations were not reasonably supported by the record. Tr. 25-26.

Likewise, I am not persuaded by Plaintiff's reliance on *Brink v. Comm'r Soc. Sec. Admin.*, 343 Fed. App'x 211, 212 (9th Cir. 2009). In *Brink*, the ALJ accepted medical evidence that the claimant had moderate difficulty maintaining concentration, persistence, or pace, but the hypothetical presented to the VE referenced only "simple, repetitive work." *Id.* The *Brink* court determined that the limitation to simple, repetitive work failed to adequately encompass the claimant's limitations in concentration, persistence and pace.

*Brink* does not establish error in the ALJ's RFC assessment in this case. Unlike *Brink*, the the ALJ thoroughly examined the results of Dr. Shields' examination (including Plaintiff's mild limitations with concentration and social functioning) and concluded that an RFC limiting Plaintiff to simple work adequately incorporates the mild limitations assessed by Dr. Shields, as well as those

limitations deemed credible by the ALJ, when examining the record as a whole. Therefore, consistent with the medical evidence in the record, the ALJ properly translated Plaintiff's mild limitations into the RFC for simple, repetitive work. *Stubbs-Danielson*, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding an RFC limiting a claimant to simple, repetitive work "adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony.").

Therefore, I conclude that the RFC reflects only those "limitations that the ALJ found credible and supported by substantial evidence." *Bayliss*, 427 F.3d at 1217; *accord De Medeiros v. Colvin*, No. 2:12-cv-0699-EFB, 2013 WL 5423175, *4-5 (E.D. Cal. Sept. 26, 2013) (holding ALJ did not err in failing to incorporate mild limitations in social functioning and concentration, persistence and pace); *Swingle*, 2016 WL 1399362 at *5 (finding ALJ did not err by failing to include mild to moderate limitations in concentration, persistence and pace in RFC); *Hayes v. Astrue*, No. 3:11-cv-00481-BR, 2012 WL 1314177, *6 (D. Or. Apr. 17, 2012) (determining ALJ did not err in omitting Dr. Sacks' mental limitations from RFC where defined as "a slight limitation . . . but the individual can generally function well").

In summary, because the ALJ adequately considered and incorporated Plaintiff's social functioning limitations and limitations on concentration, persistence and pace in the RFC, I reject Plaintiff's contention that the ALJ disregarded his step three findings. Likewise, the ALJ's RFC assessment and corresponding hypothetical to the VE properly takes into account Plaintiff's mild limitations with social functioning and concentration, persistence and pace. The ALJ's RFC is supported by substantial evidence and free of legal error.

////

11 - OPINION AND ORDER

## II.    The ALJ's Error at Step Five Is Harmless

### A.    Standards

At step five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(g); 416.920(g).  An ALJ may not rely on the VE's testimony without inquiring whether it conflicts with the Dictionary of Occupational Titles ("DOT") and obtaining a reasonable explanation for any apparent conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). "When there is an apparent conflict between the vocational expert's testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle – the ALJ is required to reconcile the inconsistency." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015). If the ALJ relies on a VE's testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." *Johnson*,  60 F.3d at 1435. "[I]n order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

The Ninth Circuit has determined that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin,* 778 F.3d at 847.  This conflict invokes the ALJ's duty to resolve the deviation. *Id.* The *Zavalin* court concluded that the ALJ failed to recognize the inconsistency between a limitation to simple, repetitive tasks and Level 3 reasoning, and thus, the ALJ erred by failing to ask the VE why a person with the claimant's limitation could nevertheless meet the demands of Level 3 Reasoning.

*Id.* While Level 3 Reasoning seems inconsistent with an RFC limited to simple and routine work tasks, Level 2 Reasoning appears more consistent. *See Zavalin*, 778 F.3d at 847; *Xiong v. Comm'r Soc. Sec. Admin.*, No. 1:09-cv-00398-SMS, 2010 WL 2902508, *6 (E.D. Cal. July 22, 2010) (collecting cases; "Courts within the Ninth Circuit have consistently held that a limitation requiring simple or routine instructions encompasses the reasoning levels of one and two.")

  B. *Analysis*

  At step five, the ALJ relied upon the VE's testimony to find that jobs exist in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of cashier (DOT #211.462-010), storage facility clerk (DOT #295.367-026), and order caller (DOT #209.667-014). Plaintiff alleges the DOT descriptions for cashier and storage facility clerk requires him to perform at a higher reasoning level (reasoning Level 3), than is permitted by his RFC, which limited him to "simple work tasks" with an SVP of 2 or less. Plaintiff contends that the ALJ erred by failing to resolve the apparent conflict between the DOT and the VE's testimony, citing *Zavalin*. Additionally, Plaintiff argues that the order caller job, although it requires only Reasoning Level 2, does not exist in significant numbers in the national economy. Plaintiff is correct.

  In the instant case, the DOT codes for the cashier and storage facility clerk jobs show that they require Level 3 reasoning skills. Thus, as in *Zavalin*, there is an apparent conflict between Plaintiff's RFC limited to simple work tasks with an SVP of 2 or below and the Level 3 Reasoning requirements of the cashier and storage facility clerk jobs. Here, the ALJ, without the benefit of the *Zavalin* decision, failed to ask the VE to explain the deviation from the DOT, or how a person with Plaintiff's limitations could nevertheless meet the demands of Level 3 reasoning. Therefore, I conclude that the ALJ erred by relying on the VE's testimony to find Plaintiff's RFC compatible with

13 - OPINION AND ORDER

the cashier and storage facility clerk jobs requiring Level 3 reasoning. *Zavalin*, 778 F.3d at 847.
Because the DOT code shows that the order caller job requires Level 2 reasoning, the ALJ did not
err in relying on the VE's testimony in this respect.[2]

Plaintiff argues, however, that 11,000 order caller jobs existing in the national economy does
not represent a "significant number" needed to satisfy the Commissioner's step five burden.  As
plaintiff correctly highlights, the Ninth Circuit has "never set out a bright-line rule for what
constitutes a 'significant number' of jobs." *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519,
528 (9th Cir. 2014).  However, in *Gutierrez*, the Ninth Circuit noted that 25,000 jobs in the national
economy was a "close call," but concluded that the 25,000 jobs in that case represented a "significant
number." *Id.* at 529.

In this case, the VE testified that the order caller job had 11,000 jobs nationwide after 90
percent erosion to accommodate for Plaintiff's limitations; the VE did not testify as to how many
jobs existed in the local economy.   Tr. 27, 289; *Beltran v. Astrue*, 700 F.3d 386, 389-90 (9th Cir.
2012) (holding a "significant number of jobs" may be satisfied by either regional or national
economy numbers). I conclude that on the record before me, 11,000 order caller jobs in the national

---

[2]Plaintiff's contention that his RFC is inconsistent with Level 2 reasoning is without
merit.  The Ninth Circuit has concluded that an RFC limiting the claimant to one to two step
tasks is inconsistent with Level 2 reasoning. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996,
1003 (9th Cir. 2015) (finding ALJ erred in failing to resolve conflict between RFC limitation of
one to two step tasks and Level 2 reasoning). Contrary to Plaintiff's contention, *Rounds* is
inapplicable here because Plaintiff was *not* limited to one to two step tasks, but instead could
perform simple work tasks with an SVP of 2 or below.  The District of Oregon repeatedly has
held that the limitation to perform simple and routine tasks is not inconsistent with Reasoning
Level 2 jobs. *See, e.g., Gilbert v. Colvin*, 6:14–cv–00394–AA, 2015 WL 1478441, at *6-7 (D.
Or. Mar. 31, 2015) (collecting cases).

economy does not represent a significant number, and the Commissioner has not met its step five burden with respect to the order caller job.

The Commissioner contends that the errors at step five are harmless because there is persuasive, substantial evidence in the record that establishes Plaintiff is capable of performing Level 3 reasoning, and thus the ALJ did not err in adopting the VE's testimony that Plaintiff's RFC is consistent with the cashier and storage facility clerk jobs which exist in significant numbers. *Zavalin*, 778 F.3d at 848; *Molina*, 674 F.3d at 1111; *see also Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (an error is harmless if inconsequential to the outcome of the nondisability determination). The VE testified that there are 165,700 cashier jobs nationally and 42,000 storage facility clerk jobs nationally after erosion for Plaintiff's limitations, readily satisfying the Commissioner's step five burden. The Commissioner is correct.

Examining the record, there is ample evidence from which to conclude that the ALJ's failure to reconcile the VE's testimony with the DOT in this case is harmless. *See Musser v. Colvin*, No. 1:14-cv-00684-SKO, 2015 WL 4460677, *7 (E.D. Cal. July 21, 2015) (holding ALJ's error was harmless where claimant's education and work experience demonstrated he was capable of Level 3 reasoning despite RFC limiting him to simple routine tasks). Although not dispositive of Plaintiff's reasoning abilities, Plaintiff has obtained a GED, and denied a history of special education. *See* 20 C.F.R. § 404.1564 (b)(4) (noting that high school education generally means "abilities in reasoning, arithmetic, and language skills" and that "someone with these educational abilities can do semi-skilled through skilled work). Further demonstrating Plaintiff's reasoning abilities, Plaintiff's past relevant work as a carpenter (DOT #860.381-022), is skilled work with an SVP of 7 and a reasoning Level of 4. Tr. 287. Plaintiff was employed as a carpenter for 18 years.

Tr. 47-48. To be sure, Level 4 reasoning requires a worker to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists." DOT, App. C, 1991 WL 688702. This evidence shows that Plaintiff has long-term past relevant work with a higher reasoning level than that adopted by the ALJ in its decision. *See Musser*, 2015 WL 4460677 at *8-9 (noting claimant's past relevant work as a carpenter exceeded Level 3 reasoning).

Moreover, there is no medical evidence establishing that Plaintiff suffers diminished cognitive or reasoning abilities that would preclude him performing Level 3 reasoning. The credited medical evidence indicates that Plaintiff has mild issues from his depression and anxiety. Indeed, Dr. Shields found Plaintiff mildly limited in understanding, remembering and carrying out simple instructions *and* complex instructions, which Dr. Shields defined as "slight" limitations, but that Plaintiff generally could function well. Tr. 445. As indicated above, in his mental status examination, Dr. Shields indicated Plaintiff was fully oriented to person, place and time, could spell "world" forwards and backwards, could recall three nouns after an intervening task, his intellect was in the low average range, abstraction and comprehension were intact, with sequential and goal directed thinking, and no delusions or hallucinations. Tr. 442-43. Additionally, at his disability hearing in September 2013, Plaintiff testified that he enjoyed puzzle books and playing Sudoku in his free time. Tr. 59-60. Finally, Plaintiff does not suggest that his mild mental limitations prevent him from performing Level 3 reasoning, which requires a claimant to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "deal with problems involving several concrete variables in or from standardized situations." DOT App. C, 1991 WL 688702. *Compare Zavalin*, 778 F.3d at 847-48 (noting that Zavalin's GED in special

16 - OPINION AND ORDER

education did not provide substantial evidence that he is capable of performing Level 3 reasoning), *with Musser*, 2015 WL 4460677 at *9 (finding Musser's high school diploma, college courses, past skilled work as a carpenter, and mild limitations in carrying out detailed tasks provided substantial evidence that he was capable of working as a cashier, storage facility rental clerk and ticket seller, rendering ALJ's error harmless).

In short, the record contains persuasive, substantial evidence from which to conclude that Plaintiff is capable of performing the jobs of cashier and storage facility clerk. Therefore, I conclude that substantial evidence supports the ALJ's reliance on the VE's testimony that Plaintiff is capable of working as a cashier and storage facility clerk, despite his RFC limiting him to simple work tasks with an SVP of 2 or below. *Musser*, 2015 WL 4460677 at *9. Accordingly, the ALJ's error is harmless.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this *22* day of AUGUST, 2016.

Malcolm F. Marsh
United States District Judge

17 - OPINION AND ORDER